**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BRENDA FAYE HINTON,**

        **Plaintiff,**

  **vs.**                              **CASE NO. 2:03-CV-878**

                                    **MAGISTRATE JUDGE KING**

**ALAN LAZAROFF,** *et al.*,

        **Defendants.**

**OPINION AND ORDER**

This is an employment action in which Brenda Faye Hinton ("plaintiff") alleges racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 ("Title VII"), 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1981 ("Section 1981") and she also alleges breach of contract in violation of Ohio law. With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on *Defendants' Motion for Summary Judgment*. Doc. No. 45. For the reasons that follow, defendants' motion is **GRANTED**.

**I.    FACTS**

Plaintiff is an African-American female who began work on February 28, 2000, as a full-time math teacher for the Ohio Department of Rehabilitation and Correction ("DRC") at the Madison Correctional Institution ("MaCI"). *Plaintiff's Deposition*[1] ("*Pl. Dep.*") at 15-17; *Second Amended Complaint* ("*Complaint*") ¶ 7. At the time, defendant Alan Lazaroff was the warden of MaCI, defendant Anne Fornal was the principal of the MaCI school and defendant

---

[1] All of the deposition transcripts to which the Court refers in this *Opinion and Order* were filed manually with this Court on January 20, 2006.

John Row was an officer in labor relations at MaCI. *Complaint* ¶¶ 4-6. Defendant Elizabeth C. Murch is identified as the Bureau EEO Chief for the DRC. *Complaint,* §27. Plaintiff's immediate supervisor was the assistant principal for MaCI, Rosaire Ifedi, an African American. *Pl. Dep. at* 26-27; *Complaint* ¶ 10.

Plaintiff's position as a math teacher required her to spend a certain amount of time in a probationary period. *Pl. Dep.* at 90; Ohio Revised Code ("O.R.C.") § 124.37(C). In August of 2000, assistant principal Ifedi performed a mid-probationary review of plaintiff. *Complaint* ¶¶ 9-12; *Pl. Dep.* at 84-85 and *Exhibit 12* attached thereto. Ms. Ifedi rated plaintiff as having met expectations for all areas of review and commented: "Ms. Hinton is a great addition to our education dept." *Complaint*, *Exhibit A* attached thereto.

In November 2000, plaintiff's performance was reviewed again, as required during her probationary period, by defendant principal Anne Fornal. *Complaint* ¶ 14 and *Exhibit B* attached thereto. Defendant Fornal rated plaintiff as falling below expectations in each of the areas in which she had been previously reviewed. *Id.* ¶ 17; *Pl. Dep.* 86-87 and *Exhibit 13* attached thereto. In this second review, defendant Fornal noted several times that plaintiff's temporary teaching certificate had expired on June 30, 2000, and that plaintiff had not taken steps to restore her certification. *Id.* Defendant Fornal recommended that plaintiff's employment be terminated. *Pl. Dep.* at 66-67, 99 and *Exhibits 7, 13* attached thereto. On November 14, 2000, plaintiff was terminated. *Pl. Dep.* at 100 and *Exhibit 14* attached thereto; *Complaint* ¶21.

On December 5, 2000, plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that DRC terminated her employment because of her race. *Complaint* ¶ 25 and *Exhibit D* attached thereto.

Plaintiff's charge, in relevant part stated:

> On November 14, 2000, Alan Lazaroff, White, Warden, informed me that I was being terminated because I was unable to make the necessary adjustments for the position and because I lacked certification to teach. I believe I was terminated due to considerations of my race, Black. . . .

*Id.*

Plaintiff and DRC agreed to settle the charge, and the terms of the agreement were memorialized in a "Negotiated Settlement Agreement" ("NSA"). *Complaint* ¶¶ 26, 27. The terms of the NSA required DRC to "expunge [plaintiff's] termination for a resignation and provide a neutral employment reference to potential employers upon request." *Complaint*, *Exhibit E* attached thereto. In return, plaintiff agreed "not to institute a lawsuit based on [the December 5, 2000, OCRC and EEOC charges]" and the OCRC and the EEOC agreed not to process the charge further. *Id.*

On December 28, 2001, the EEOC sent a letter to the parties informing them of its determination that the charge had been successfully settled. *Pl. Dep.* at 147-48 and *Exhibit 19* attached thereto.

In February 2002, plaintiff applied for a teaching job with the Ohio Department of Youth Services (DYS) at the Circleville Juvenile Correctional Facility. *Complaint* ¶ 29. DYS requested a reference from DRC pertaining to plaintiff's employment at MaCI. *Pl. Dep.* at 157-58. Clarissa Harris, a personnel officer in the Human Resources Department at MaCI, completed and signed the reference form, indicating "probationary removal, failed to obtain teacher certification." *Deposition of Clarissa Harris* ("*Harris Dep.*") at 36-39 and *Exhibit 3* attached thereto. Plaintiff was not hired by DYS. *Pl. Dep.* at 167.

On July 1, 2002, plaintiff filed a second charge with the OCRC and EEOC, alleging

3

retaliation based on DRC's failure to change plaintiff's personnel file to indicate that she resigned and that she was to be given a neutral employment reference. *Pl. Dep.* at 71-73 and *Exhibit 23* attached thereto. On August 18, 2003, plaintiff received notice of dismissal of the charge and informing plaintiff of her right to sue. *Id.* and *Exhibit 25* attached thereto.

On September 26, 2003, plaintiff instituted this lawsuit. On January 20, 2006, defendants filed *Defendants' Motion for Summary Judgment*, Doc. No. 45, and on February 10, 2006, plaintiff filed *Plaintiff's Response In Opposition to Defendants' Motion for Summary Judgment* ("*Plaintiff's Memorandum Contra*"), Doc. No. 47.

## II.     STANDARD OF REVIEW

The standard for summary judgment is well established. This standard is found in Fed. R. Civ. P. 56, which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. VanSickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**III.    ANALYSIS**

Plaintiff alleges race discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5, as well as 42 U.S.C. §§1981 and 1983, based on the charge she filed with the OCRC and the EEOC in December 2000. *Complaint* Counts I, II. In addition, plaintiff alleges retaliation in violation of Title VII, Section 1981 and Section 1983 as articulated in the charges filed with the OCRC and the EEOC in July 2002. *Id.*, Count III. Finally, plaintiff asserts a state law breach of contract claim against defendants for their alleged failure to expunge her termination from her personnel file and failure to provide a neutral employment reference.

*Id.*, Count IV.  The Court will address each claim.

    A.    **Race Discrimination**

Plaintiff first alleges that her employment was terminated in November 2000 because of her race, in violation of Title VII, Section 1981 and Section 1983.  Although it is uncontroverted that the NSA encompasses this claim, plaintiff contends that the NSA does not bar the claim because defendants acted in breach of the terms of the NSA.  Defendants argue, *inter alia*, that plaintiff may not resurrect the original discrimination charge that was settled in 2001 by the NSA.  The Court agrees.

As this Court explained in *Folley v. Henderson*, 175 F. Supp.2d 1007, 1011-12 (S.D. Ohio 2001), a breach of a negotiated settlement agreement cannot revive plaintiff's right to litigate the claims encompassed by that agreement:

> The Sixth Circuit has adopted this position (which has been expressed by other courts), albeit in an unpublished decision, reasoning:
>
>> Although there is not a great deal of authority on this issue, the parties seem to agree that a discrimination plaintiff can enter into a settlement, and that doing so forecloses the right to sue for the underlying Title VII violation. The Supreme Court has stated, in *dicta*, that "an employee may waive his cause of action under Title VII as part of a voluntary settlement." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974).  Various courts have interpreted this to mean that parties who enter into settlements of Title VII claims waive their right to proceed on the underlying claim.  *See, e.g.*, *Pilon v. Univ. of Minnesota*, 710 F.2d 466 (8th Cir.1983); *Vermett v. Hough*, 606 F. Supp. 732, 745 (W.D.Mich.1984); *Sherman v. Standard Rate Data Serv. Inc.*, 709 F. Supp. 1433 (N.D. Ill.1989).  Any other rule would virtually eliminate the incentive for defendants to settle Title VII suits.
>
>> *Jones v. PPG Indus., Inc.*, 937 F.2d 608, 1991 WL 122364 (6th Cir. 1991) (unpublished).  *See also Witte v. Lakeside Inn & Casino*, 61 F.3d 914, 1995 WL 437939 (9th Cir. 1995)

6

> (unpublished) (holding that the breach of a settlement agreement does not revive settled Title VII claims); *Breen v. Norwest Bank Minnesota*, 865 F. Supp. 574, 577-578 (D. Minn. 1994) ("Even where the plaintiff alleges a breach of the underlying settlement agreement, the plaintiff's exclusive remedy is for breach of contract; she is precluded from reviving the underlying claims.").

This same proposition holds true for underlying causes of action not brought under Title VII. *See Simpson v. Columbus Southern Power Co.*, Case No. C2-02-1080, 2003 U.S. Dist. LEXIS 13400 (S.D. Ohio July 14, 2003) (Americans with Disabilities Act claims and Employee Retirement Income Security Act claims).

Moreover, it is plainly the policy of Congress that the EEOC "shall endeavor to eliminate" alleged unlawful practices "by informal methods of conference, conciliation and persuasion." 42 U.S.C. § 2000e-5. The preference for voluntary disposition of complaints is also evidenced by the requirement that issuance of the notice of right to sue be delayed until time for conciliation has lapsed. 42 U.S.C. § 2000e-5(f)(1). *See Alexander v. Gardner-Denver Co.*, 415 U.S. at 44 ("Congress enacted Title VII . . . to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal.").

The proper redress for an alleged breach of the NSA is a state law breach of contract claim, which the Court will address *infra*. Accordingly, even viewing the evidence in the light most favorable to her, plaintiff has failed to raise a genuine issue with regard to her underlying racial discrimination claim, and defendants are entitled to summary judgment on that claim.

  B.  **Retaliation**

Plaintiff alleges that defendants acted in breach of the NSA by failing to expunge

reference to plaintiff's termination in her personnel file and by failing to provide a neutral employment reference to one of her potential employers. Plaintiff contends that defendants' breach was committed in retaliation for her filing charges of discrimination in 2000, which is itself a separate violation of Title VII, Section 1983[2] and §1981.[3]

The evidentiary framework applicable to Title VII cases governs Section 1983 and Section 1981 claims as well. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000) ("The showing a plaintiff must make to recover on an employment discrimination claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."); *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) ("This court has noted 'the elements of [a] *prima facie* case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981.'" (citation omitted)).

A claim of retaliation in violation of Title VII is analyzed under the well-established *McDonnell Douglas/Burdine* burden-shifting framework. *Johnson v. United State Dep't of Health and Human Servs.*, 30 F.3d 45, 47 (6th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256

---

[2]Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U. S. C. § 1983. Plaintiff alleges that defendants' retaliation prevented her from exercising her right to petition for redress of grievances secured by the First Amendment to the United States Constitution. *Complaint* ¶ 56.

[3]In relevant part, Section 1981 guarantees that "all persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

(1981)).  Under the *McDonnell Douglas/Burdine* paradigm, a plaintiff claiming unlawful retaliation under Title VII must first establish a *prima facie* case.  *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 256.  Once a plaintiff establishes a *prima facie* case of retaliation, the burden of going forward then shifts to the defendant employer to articulate a legitimate, nonretaliatory reason for its action.  *Board of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24 (1978); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

If the defendant employer satisfies its burden of producing a legitimate, nonretaliatory reason for terminating the plaintiff's employment, the plaintiff must then prove by a preponderance of the evidence that the defendant intentionally retaliated against her.  *Id.*  The ultimate burden of persuasion remains throughout this burden-shifting analysis on the plaintiff.  *Burdine*, 450 U.S. at 253; *Wrenn*, 808 F.2d at 501.

In the case *sub judice*, defendants contend that plaintiff's retaliation claim fails because she cannot establish a *prima facie* case, defendants have offered a legitimate, nonretaliatory reason for acting in breach of the NSA, and plaintiff cannot establish that defendants' proffered reasons are pretextual.

    **1.**    **Plaintiff cannot establish a *prima facie* case of retaliation**.

To establish a *prima facie* case of retaliation, plaintiff must establish that: (1) she engaged in activity protected by Title VII; (2) the exercise of her civil rights was known to the defendants; (3) thereafter, the defendants took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  *See Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1118 (6th Cir. 1996) (citing *Wrenn*, 808 F.2d at 500); *Buck v. Fries and Fries, Inc.*, 953 F. Supp. 896, 907 (S.D. Ohio 1996).  The

burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met. *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

Defendants do not dispute that plaintiff can establish the first three prongs of a *prima facie* case. Instead, defendants argue that plaintiff has not shown a causal connection between her filing of the 2000 discrimination charges and the alleged breaching of the NSA. The Court agrees.

To prove a causal connection, plaintiff must produce sufficient evidence from which an inference can be drawn that defendants acted in breach of the NSA because plaintiff filed the charge of discrimination in 2000. *Id.* at 861 (citations omitted). Although no one factor is dispositive, evidence that the employer treated the plaintiff differently than similarly situated employees, or that the adverse action was taken shortly after the plaintiff's exercise of protected rights, is relevant to the issue of causation. *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987); *Wrenn*, 808 F.2d at 501.

Plaintiff attempts to show causation by arguing:

> Here there is a question of fact as to whether Defendants had an affirmative duty to ensure the terms of the [NSA] were carried out in a timely manner.

*Plaintiff's Memorandum Contra* at 15. This argument, however, misses the mark. The issue before the Court is whether plaintiff has set forth sufficient evidence from which an inference can be drawn that defendants failed to expunge her record or provide a neutral employment reference in retaliation for her filing racial discrimination charges with the OCRC and the EEOC in 2000. Plaintiff's argument falls far short of meeting her burden of showing a causal connection.

Thus, even when viewing the evidence in the light most favorable to plaintiff, plaintiff

10

has failed to raise a genuine issue as to whether there existed a causal connection between her protected activity and defendants' adverse action. Plaintiff has therefore failed to establish a *prima facie* case of retaliation.

> **2. Defendants offer a legitimate, nonretaliatory reason for the alleged breach of the NSA, which plaintiff has not shown is pretextual**.

Even if plaintiff had established a *prima facie* case of retaliation, defendants would nevertheless be entitled to summary judgment on that claim because they have articulated a legitimate, nonretaliatory reason for the alleged breach of the NSA, which plaintiff has not shown to be pretextual. *See Burdine*, 450 U.S. at 252-53; *Wrenn*, 808 F.2d at 500.

Defendants characterize their failure to properly expunge plaintiff's employment records as "nothing more than the mistake or inadvertence of a large, statewide agency." *Defendants' Motion for Summary Judgment* at 21, 22 (citing to *Murch Dep.* at 43-47). Defendant Elizabeth Murch, chief of DRC's Equal Employment Opportunity department, signed the NSA on behalf of DRC and submitted the NSA, by hand, to the proper department at DRC. *Deposition of Elizabeth Murch* ("*Murch Dep.*") at 39, 43-47 and *Exhibit 1* attached thereto. Defendant Murch recalls that the person in that department was a new employee. *Id.* Defendant Murch relied on the employee to properly file the NSA. The apparent failure of that employee to do so resulted in the issuance of the improper reference given to a potential employer of plaintiff. *Id.*

This explanation, as defendants themselves admit, is a "less than ideal explanation," *Defendants' Motion for Summary Judgment,* at 21, is sufficient to meet defendants' burden of articulating a legitimate, nonretaliatory reason for failing to abide by the terms of the NSA. Defendants' burden is merely one of production; a defendant is not required "to prove its legitimate, [nonretaliatory] reason, but merely to produce it." *Burton v. Ohio*, 798 F.2d 164, 167

(6th Cir. 1986); *see also Board of Trustees of Keene State Coll.*, *supra,* 439 U.S. at 25 fn.2 ("employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate, nondiscriminatory reasons'").

Because defendants have met their burden of articulating a legitimate, nonretaliatory reason for failing to abide by the terms of the NSA, the burden now shifts to plaintiff to demonstrate that the proffered reason for defendants' failure was not the true reason, which was instead unlawful retaliation.  *See Burdine*, 450 U.S. at 255.

Plaintiff contends that defendants' "argument that they simply made a mistake in not complying with the settlement agreement is not credible."  *Plaintiff's Memorandum Contra,* at 15.  Further, plaintiff argues, "[r]easonable minds could conclude that in a matter as important as [plaintiff]'s future livelihood, allowing the change that was to be made to [plaintiff]'s personnel file to simply slip through a crack in the floor of DRC's paperwork mill is unacceptable."  *Id.* at 15.  The Court agrees that defendants' careless administrative procedures reflect quite poorly on DRC.  However, a mistake such as the one that defendants concede is simply not sufficient to render plaintiff's claim of retaliation actionable.  Instead, plaintiff must adduce evidence:

> (1) that the proffered reasons had no basis in fact;
>
> (2) that the proffered reasons did not actually motivate the adverse employment action; or
>
> (3) that the proffered reasons were insufficient to motivate the adverse employment action.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)).  As this Court has previously explained:

> The first type, that the reasons had no basis in fact, is proven by evidence tending to establish that the proffered bases for [the adverse action] simply are false. *Manzer*, 29 F.3d at 1084, citing *Anderson v. Baxter Healthcare*, 13 F.3d 1120, 1123-24 (7th Cir. 1994).
>
> The second type, that the reasons did not actually motivate the discharge, is proven by "admitting the factual basis underlying employer's proffered explanation and further admitting that such conduct could motivate [the adverse action]." *Manzer*, 29 F.3d at 1084. Once this is shown, the plaintiff may then attempt to show that the discriminatory motivation for termination is more likely the underlying reason than the employer's proffered one. *Id.*
>
> The third type, that the proffered reasons were insufficient to motivate [the adverse action], requires that a plaintiff show that other employees, particularly those that did not engage in the protected activity, engaged in *substantially identical conduct* to that which the employer contends motivated the [adverse action]. *Id. See also Clayton v. Meijer, Inc.*, 281 F.3d 605 (6th Cir. 2002) (holding that conduct of other employees must be similar in relevant aspects).

*Gliatta v. Tecum Inc.*, 211 F. Supp. 2d 992, 1004-05 (S.D. Ohio 2002).

Plaintiff attempts to establish only the first showing, *i.e.*, defendants' explanation is false. *Plaintiff's Memorandum Contra,* at 14-15. Plaintiff contends that defendant Murch "charged someone she knew was new to the personnel department, and presumably unfamiliar with the procedures and system, with carrying out the terms of the [NSA]." *Id.* at 15 (citing *Murch Depo.* at 45-47). Based on this, plaintiff speculates that defendant Murch intended that the NSA would be misplaced and that she thereby intended to harm plaintiff because plaintiff had previously filed discrimination charges against defendants in 2000. Plaintiff's speculation, however, is simply insufficient to raise a genuine issue as to whether the defendants' explanation, *i.e.*, that the personnel error was innocent rather than malicious, is factually false. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (citing *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (*en banc*) (holding that summary judgment was appropriate where the inferences plaintiff sought to draw from evidence were akin to "flights of fancy, speculations,

13

hunches, intuitions, or rumors about matters remote from [personal] experience."). *See also Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence") (internal citations omitted).

Accordingly, even when viewing the evidence in the light most favorable to plaintiff, plaintiff has not raised a genuine issue as to whether defendants' legitimate, nonretaliatory explanation for acting in breach of the NSA was pretext for unlawful retaliation. Thus, even if plaintiff had set forth a *prima facie* case of retaliation, defendants would nevertheless be entitled to summary judgment on that claim.

### C. Breach of Contract

It is undisputed that defendants acted in breach of the NSA by failing to expunge reference to plaintiff's termination in her personnel records and by failing to provide a neutral employment reference to one of her potential employers. Defendants, however, contend that this Court lacks jurisdiction over plaintiff's state law breach of contract claim. The Court agrees.

Plaintiff asserts her breach of contract claim against defendants in both their official and personal capacities under Ohio common law. *Complaint* ¶¶ 58-66. The Eleventh Amendment to the United States Constitution bars plaintiff's common law breach of contract claim against

defendants in their official capacities because such a suit is, in essence, a suit against the state. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Moreover, there is no federal supplemental jurisdiction over state law claims against non-consenting state defendants. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002) ("we hold that [28 U.S.C. §] 1367(a)'s grant of jurisdiction does not extend to claims against non-consenting state defendants.")). Ohio has not consented to suit in federal court. *See Stein v. Kent State Univ. Bd. of Trustees*, 994 F. Supp. 898, 902-03 (N.D. Ohio 1998), *aff'd*, 181 F.3d 103 (6th Cir. 1999).

In addition, the Ohio Court of Claims Act, O.R.C. §2743.02(F), requires that state law claims brought against state employees even in their personal capacities must first be brought in the Court of Claims for a determination of whether the employee is entitled to the immunity conferred by O.R.C. §9.86. *Haynes v. Marshall*, 887 F.2d 700 (6th Cir. 1989). "[S]tate employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." *Id.*, at 704.

Plaintiff did not submit her breach of contract claim to the Court of Claims, and she notes that it is now too late to do so. *Plaintiff's Memorandum Contra,* at 17. Plaintiff therefore requests that this Court exercise its discretion in favor of supplemental jurisdiction over this claim under 28 U.S.C. § 1367. The Court declines plaintiff's invitation. Until the Ohio Court of Claims resolves the state law immunity issue, this Court lacks jurisdiction to entertain this claim. *See Haynes, supra,* 887 F.2d at 705. This claim must therefore be dismissed for lack of jurisdiction.

**WHEREUPON**, *Defendants' Motion for Summary Judgment*, Doc. No. 45, is **GRANTED**.

The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** in favor of defendants.


<u>July 21, 2006</u>                                             <u>  *s/Norah McCann King*         </u>
DATE                                                                  Norah McCann King
                                                                              United States Magistrate Judge